```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOHN L. CURLEY,<br><br>          Plaintiff,<br><br>     v.<br><br>KARL R. MOSIER a/k/a CARL MOSIER, et al.<br><br>          Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 09-2066 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

J. Davy Yockey, Esq.
FLAGER & YOCKEY
One Northbrook Corporate Center
1210 Northbrook Drive, Suite 280
Trevose, PA 19053
     Attorneys for Plaintiff

James J. Green, Esq.
Christopher J. Carlson, Esq.
CIPRIANI & WERNER, P.C.
1000 South Lenola Road
Tall Oaks Corporate Center
Building Two, Suite 101
Maple Shade, NJ 08052
     Attorneys for Defendant

**SIMANDLE**, District Judge:

I.    **INTRODUCTION**

     This matter is before the Court on Defendant Mosier's motion to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Jurisdiction in this case depends on whether Plaintiff and

Defendant were domiciled in different states on April 29, 2009, the filing date of the Complaint.  See 28 U.S.C. § 1332(a)(1) (2009); Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972) (explaining that citizenship is determined by a person's domicile).  Defendant was domiciled in New Jersey.  For the reasons discussed below, this Court finds that contrary to Plaintiff's contention, he was also domiciled in New Jersey on April 29, 2009, and therefore this Court lacks diversity jurisdiction over the case.

## II. BACKGROUND

This negligence suit arises out of an incident that occurred in May 2007 on Defendant's premises in Mount Laurel, New Jersey. (Compl. ¶ 7.)  Plaintiff claims that while performing his duties as a pool serviceman at Defendant's home, Defendant's dogs attacked him "causing . . . severe and serious injuries."  (Id.) Plaintiff does not stipulate exact or estimated damages sought but simply states in the Complaint that the amount in controversy exceeds the sum of $75,000.  (Compl. ¶ 5.)

Prior to 2007, Plaintiff had anchored his personal and professional life in New Jersey.  Plaintiff was born in Cherry Hill, New Jersey, (Pl.'s Dep. 16:12-4, Jan. 12, 2010) and was raised in Pennsauken, New Jersey (Pl.'s Aff. ¶ 1).  Plaintiff worked for Audubon Cesco Pool Service, a company based in

Audubon, New Jersey, from April 2002 until the incident in question in May 2007.  (Id. ¶¶ 2, 4.)  Plaintiff has not been employed since.  (Id. ¶ 6.)  In May 2007, Plaintiff lived with his father and brother in a rental house at 505 Chambers Street, Gloucester City, New Jersey.  (Id.)  Plaintiff had his own bedroom and helped pay for the rent, utilities, and food.  (Id.)

After the May 2007 incident, Plaintiff began to form ties with Pennsylvania.  Following wrist surgery in October 2007, Plaintiff moved in with his girlfriend at 125 South Limekiln Pike, Chalfont, Pennsylvania.  (Id. ¶ 7.)  Between October 2007 and April 2009, Plaintiff regularly spent five to six nights a week there.  (Id.)  Plaintiff estimates that he gave his girlfriend between $300-$500 monthly to help cover house-related expenses, like the mortgage.  (Id. ¶ 9.)  Plaintiff used his girlfriend's address to receive written correspondences from his attorney (Pl.'s Dep. 19:10-3, Jan. 12, 2010), a subscription to "ESPN The Magazine," and workers' compensation checks (Pl.'s Aff. ¶ 17).  These checks were received weekly from fall 2007 until winter 2008 and then again from fall 2008 until spring 2009.  (Pl.'s Dep. 42-4, Jan. 21, 2010.)  As of April 2009, Plaintiff was on his girlfriend's cell phone plan which used a Pennsylvania area code.  (Pl.'s Aff. ¶ 9.)

Although living primarily in Pennsylvania, Plaintiff frequently visited his family in New Jersey and would stay once

or twice a week at 740 Market Street, Gloucester City, New Jersey, the home his father had rented since summer 2008. (Pl.'s Aff. ¶¶ 7-8; Pl.'s Dep. 40:5-14, Jan. 21, 2010.) Plaintiff, however, did not help pay for rent, utilities, or other expenses at this rental house. (Pl.'s Aff. ¶ 8.) Nor did Plaintiff have his own bedroom there or leave his clothes there. (Id.) When visiting, Plaintiff only slept on the couch. (Id.)

Besides visiting his family, Plaintiff maintained many other significant connections to New Jersey. Plaintiff held a New Jersey driver's license (Pl.'s Dep. 10:25-11:1, Jan. 21, 2010) and owned two vehicles both of which were registered in New Jersey (Id. 37:18-38:19). Plaintiff received unemployment compensation checks from the State of New Jersey (Pl.'s Aff. ¶ 17) and cashed nearly all of them at banks in New Jersey (Pl.'s Dep. 17:2-22, Jan. 21, 2010). Plaintiff served as a juror in New Jersey over ten years ago (Pl.'s Aff. ¶ 15) and believes that he was still registered to vote in New Jersey on April 29, 2009, though he had not exercised that right in over fifteen years. (Pl.'s Aff. ¶ 18.) Plaintiff last filed taxes in 2006 in New Jersey (Id. ¶ 11) and when prompted said that he would provide his New Jersey address on his 2009 federal tax return (Pl.'s Dep. 11:16-12:10, Jan. 21, 2010). Plaintiff planned to file state taxes in New Jersey for 2009. (Id.)

In his Affidavit dated March 18, 2010, Plaintiff testifies

4

that he intends to live exclusively in Pennsylvania after settling his workers' compensation claims and has been looking for work only in Pennsylvania. (Pl.'s Aff. ¶ 19.) In an earlier deposition, Plaintiff claimed to be looking for work "mainly in Pennsylvania." (Pl.'s Dep. 39:4-6, Jan. 21, 2010.)

Contending that Plaintiff is a domiciliary of New Jersey, Defendant has moved for this Court to dismiss the case for lack of subject matter jurisdiction.

## III. DISCUSSION

### A.   Legal Concept of Domicile

Diversity jurisdiction requires an amount in controversy of $75,000 or greater, 28 U.S.C. § 1332(a)(1), and complete diversity of citizenship between plaintiffs and defendants. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806). Citizenship of the parties is determined at the time the complaint was filed. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004). Citizenship is synonymous with an individual's domicile. Krasnov, 465 F.2d at 1300. A person is domiciled in the place where she last lived (residency-in-fact) and intended to remain indefinitely. Id.; see Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain

there."). "One acquires a 'domicile of origin' at birth, and that domicile continues until a new one (a 'domicile of choice') is acquired." Holyfield, 490 U.S. at 48.

Changing one's domicile can happen instantly. Krasnov, 465 F.2d at 1300. To change one's domicile, an individual must take up residence in a new location and intend to remain there indefinitely. Sun Printing & Publ'g Ass'n v. Edwards, 194 U.S. 377, 383 (1904); Krasnov, 465 F.2d at 1300. "Neither the physical presence nor the intention to remain is alone sufficient." Id.; see Sun Printing, 194 U.S. at 383 ("Mere absence from a fixed home, however long continued, cannot work the change [of domicile]."). Conversely, an individual can take up residence in a new location and live there for years without changing domicile, so long as the individual forms no intention to stay indefinitely. See, e.g., Murphy v. Newport Waterfront Landing, Inc. 806 F. Supp. 322, 324 (D.R.I. 1992) (finding that a student who had attended law school in Nebraska for two years was still domiciled in Massachusetts).

Neither the Supreme Court nor the Third Circuit Court of Appeals has exhaustively expounded the factors to consider when determining a person's domicile. An individual's entire "course of conduct" should be taken into account. Korn v. Korn, 398 F.2d 689, 691 (3d Cir. 1968). Testimony about one's intention to remain in a particular place may be considered but is "subject to

6

the infirmity of any self-serving declaration." Id. at 691.  In Krasnov, the Third Circuit Court of Appeals listed some criteria for the fact-finder to use when evaluating a person's intent to remain in a particular place:  declarations, exercise of political rights, payment of personal taxes, house of residence, and places of business.  465 F.2d at 1301.  Additional factors include: location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration.  McCann v. George W. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006).

### B.   Determining Plaintiff's Domicile on April 29, 2009

#### 1.   Domicile Prior to May 2007 Incident

The parties do not explicitly address the question of Plaintiff's pre-2007 domicile.  The record, though, shows that Plaintiff was domiciled in New Jersey.  At that time, Plaintiff lived exclusively in New Jersey with his father and brother in a rental house.  (Pl.'s Aff. ¶ 4.)  Plaintiff worked in New Jersey (Id. ¶ 2), was licensed to drive there (Id. ¶ 16), filed taxes there (Id. ¶ 11), was registered to vote there (Id. ¶ 18), had two cars registered there (Id. ¶ 10), and had served on jury duty there (Id. ¶ 15).  Plaintiff's entire "course of conduct" from his personal life to his professional responsibilities took place in New Jersey.  Plaintiff not only resided in New Jersey but also

intended to remain there indefinitely.  Therefore, in May 2007, Plaintiff was domiciled in New Jersey.

### 2. Domicile Between Incident in Question and Filing of Complaint

Defendant contends that Plaintiff remained domiciled in New Jersey during the period between 2007 and the filing of this Complaint, while Plaintiff asserts that his domicile changed to Pennsylvania before filing.  To prove that his domicile changed, Plaintiff must show by a preponderance of the evidence that he not only resided in Pennsylvania but also intended to remain there indefinitely.  McCann, 458 F.3d at 288 (explaining evidentiary burdens regarding change of domicile).

#### a. Residency

Plaintiff establishes by a preponderance of the evidence that his place of residence changed from New Jersey to Pennsylvania during this period.  Plaintiff did not own real estate in Pennsylvania or New Jersey (Pl.'s Aff. ¶ 10), nor was he a lessee of property in either state (Id. ¶ 9).  The question of residency, then, turns on where Plaintiff physically lived during this period.  Plaintiff spent the majority of nights at his Pennsylvania address (Id. ¶ 7), left his clothes there (Id. ¶ 9), paid his girlfriend for rent and utilities (Id.), and helped with chores (Pl.'s Dep. 49:12-15, Jan. 21, 2010).  Plaintiff

primarily used his Pennsylvania address for written correspondences, including legal matters (Pl.'s Dep. 19:10-13, Jan. 12, 2010), worker's compensation checks, and a subscription to "ESPN The Magazine" (Pl.'s Aff. ¶ 17).  Plaintiff likely would have had his New Jersey unemployment checks sent to the Pennsylvania address were it not for his belief that a New Jersey address was required to receive them.  (Id. ¶ 13.)

While Plaintiff stayed at his New Jersey address with his father and brothers once or twice a week, he did so more as a guest than a resident.  (Id. ¶ 9.)  Plaintiff did not have his own bedroom and slept on a couch during his overnight stays.  (Id. ¶ 8.)  Plaintiff did not pay for rent, utilities, or other home expenses.  (Id.)  Plaintiff brought his own food when visiting and left no clothes there.  (Id.)

The evidence in the record shows that more likely than not Plaintiff resided in Pennsylvania on April 29, 2009.  The Court finds that Plaintiff has met his burden of proof regarding change of residency.

### b.   Intent to Remain Indefinitely

A change of residency by itself, however, does not result in a change of domicile.  A person's physical presence in a new place must be accompanied by an intent to remain there indefinitely.  While Plaintiff introduces some evidence showing

his intention to remain in Pennsylvania, he ultimately fails to carry his burden of proof by a preponderance of the evidence. Plaintiff's confusion over what place he viewed as home, his limited ties to Pennsylvania, and his substantial connections to New Jersey undermine his claims that he intended to remain indefinitely in Pennsylvania.

The record reveals Plaintiff's ambivalence about whether he considered New Jersey or Pennsylvania home on April 29, 2009. When asked for his current address in the initial deposition, Plaintiff responded with his New Jersey address (Pl.'s Dep. 16:22-5, Jan. 12, 2010) and agreed that he had been a "resident" of New Jersey since at least 2006 (Id. 17:20-3). Plaintiff supplied the same address when answering the written interrogatories. (Pl.'s Resp. to Def.'s Interrog. No. 9(b).) According to Plaintiff's self-declarations, he was a dual "resident" of Pennsylvania and New Jersey on April 29, 2009. (Pl.'s Aff. ¶ 13; Pl.'s Dep. 10:3-5, Jan 21, 2010.) In his Affidavit dated March 18, 2010, almost a year removed from the filing of the Complaint, Plaintiff states: "I believe I have two residences, one in Chalfont, Pennsylvania, and one in Gloucester City, New Jersey." (Pl.'s Aff. ¶ 13.) Moreover, when asked whether he had an address in Pennsylvania on April 29, 2009, that he considered his home, Plaintiff responded that he did not. (Pl.'s Dep. 10:14-7, Jan 21, 2010.)

Based on Plaintiff's testimony, it is not at all clear that on April 29, 2009, he intended to remain indefinitely in Pennsylvania. Plaintiff viewed his life as oscillating back and forth between Pennsylvania and New Jersey. Plaintiff in his Affidavit, nonetheless, attempts to assuage any concerns that he might not remain in Pennsylvania. Plaintiff asserts: "I live for the most part in Pennsylvania and after I settle my workers' compensation, I plan to fully live in Pennsylvania. . . . I am looking for work only in Pennsylvania." (Pl.'s Aff. ¶ 19.) This self-declaration contradicts Plaintiff's statement in an earlier deposition that he was looking for jobs "mainly in Pennsylvania" but not exclusively. (Pl.'s Dep. 39:4-6, Jan. 21, 2010.) Presumably, Plaintiff would have accepted a job in New Jersey had he been offered one.

Beyond living with his girlfriend, Plaintiff's ties to Pennsylvania were minimal when he filed his Complaint with this Court. Plaintiff used his Pennsylvania address as his primary contact for written correspondences (Pl.'s Aff. ¶ 17) and had a Pennsylvania cell phone number through his girlfriend's plan (Id. ¶ 9). Plaintiff points out that he transferred title of his car to his girlfriend, who then registered it in Pennsylvania, but that happened in June 2009 which is after the date in question. (Id. ¶ 10.)

Plaintiff's connections to New Jersey, meanwhile, remained

substantial leading up to April 29, 2009.  Plaintiff's family continued to live in New Jersey, and he visited them on a weekly basis, even staying over one or two nights a week.  (Id. ¶ 9.) Plaintiff still held a New Jersey driver's license (Pl.'s Dep. 10:25-11:1, Jan. 21, 2010), still owned multiple vehicles registered in New Jersey (Id. 21:2-11, 37:18-38:19), and still received unemployment compensation checks from the State of New Jersey at his New Jersey address (Pl.'s Aff. ¶ 17), nearly all of which were cashed at banks in New Jersey (Pl.'s Dep. 17:2-22, Jan. 21, 2010).  On April 29, 2009, New Jersey was the last place Plaintiff had worked (Pl.'s Aff. ¶ 2), had filed taxes (Id. ¶ 11), had voted in a government election (Id. ¶ 18), and had served as a juror (Id. ¶ 15).

    Plaintiff has failed to demonstrate by a preponderance of the evidence that he intended to remain in Pennsylvania indefinitely.  Plaintiff's depiction of himself as a dual "resident" of Pennsylvania and New Jersey accurately characterizes his state of flux between the two states.  While Plaintiff perhaps anticipated fully living and working in Pennsylvania, his substantial connections to New Jersey and lack of evidence regarding his intention to remain in Pennsylvania outweigh any self-serving declarations of future intent. Plaintiff has not shown by a preponderance of the evidence that as of April 29, 2009, he had formed an intention to leave New

Jersey permanently and remain in Pennsylvania indefinitely.

**IV. Conclusion**

Taking Plaintiff's entire "course of conduct" into account, this Court finds that on April 29, 2009, Plaintiff had not changed his domicile from New Jersey to Pennsylvania. Both Plaintiff and Defendant were domiciled in New Jersey when the Complaint was filed, which means that no diversity of citizenship exists under 28 U.S.C. § 1332(a)(1). This Court lacks subject matter jurisdiction over this case and will grant Defendant's motion under 12(b)(1) to dismiss.

| | |
|---|---|
| **June 15, 2010** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |